IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS ROBERT COLLIER, | |
| Petitioner, | No. C 08-4704 CRB (PR) |
| vs. | ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS |
| ROBERT L. AYERS, JR., Warden, | |
| Respondent. | |

Petitioner, a state prisoner at San Quentin State Prison ("SQSP"), seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' ("BPH") August 6, 2007 decision to deny him parole on the ground that the decision does not comport with due process. Per order filed on January 13, 2009, the court found that the petition, when liberally construed, appeared to state a cognizable claim under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

**BACKGROUND**

On December 17, 1981, petitioner was convicted of second degree murder in the Superior Court of the State of California in and for the County of Santa Clara and was sentenced to an indeterminate prison term of 15 years to life.

Petitioner has been found not suitable for parole each time he has appeared before the BPH. On August 6, 2007, petitioner appeared before a BPH panel for

a subsequent parole consideration hearing and again was found not suitable for parole. The panel found that the petitioner would pose an unreasonable risk of danger to society or a threat to public safety if released from prison. The presiding commissioner explained that, in deciding to deny parole, the panel considered petitioner's commitment offense, prior social history, self-help and therapy since commitment, demeanor during the parole proceedings and lack of insight into, and minimization of, the crime.

Petitioner challenged the BPH's August 6, 2007 decision in the state superior, appellate and supreme courts. After the Supreme Court of California denied petitioner's final state habeas petition on September 17, 2008, he filed the instant federal petition for writ of habeas corpus under § 2254.

## DISCUSSION

A. <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." <u>White v. Lambert</u>, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." Id. at § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

When the state court decisions do not provide a reasoned opinion, as in this case, the court "must conduct an independent review of the record to determine whether the state court's decision was objectively unreasonable." Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1127 (9th Cir. 2006).

B. Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPH's August 6, 2007 decision finding him not suitable for parole, and denying him a subsequent hearing for two years, on the ground that the decision does not comport with due process. Petitioner claims that the BPH's decision is not supported by the evidence in the record and instead is based on the unchanging facts of his commitment offense.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such

that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). In making this determination, the board must consider various factors, including the prisoner's social history, past criminal history, and base and other commitment offenses, including behavior before, during and after the crime. See Cal. Code Regs. tit. 15, § 2402(b) – (d). California's parole scheme "gives rise to a cognizable liberty interest in release on parole" which cannot be denied without adequate procedural due process protections. Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

Due process requires that "some evidence" support the parole board's decision that petitioner is unsuitable for parole. Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same).[1] The "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPH] were without support or otherwise arbitrary." Hill, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire

---

[1] Petitioner's contention that the board's decision should be supported by a preponderance of the evidence is unavailing. The Ninth Circuit has made clear that some evidence is enough to satisfy due process. See Sass, 461 F.3d at 1125.

4

record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by [the BPH]." Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).

When assessing whether the BPH's parole unsuitability determination is supported by "some evidence," this court's analysis is framed by California's statutes and regulations governing parole suitability determinations. See Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Biggs, 334 F.3d at 915. California's statutes and regulations require that the BPH's parole unsuitability determination be supported by some evidence of the prisoner's dangerousness at the time of the hearing. See In re Lawrence, 44 Cal. 4th 1181, 1191 (2008) ("standard of review properly is characterized as whether 'some evidence' supports the conclusion that the inmate is unsuitable for parole because he or she currently is dangerous").

Due process also requires that the evidence underlying the BPH's decision have some indicia of reliability. Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904. Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board." Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds, 514 U.S. 499 (1995). In sum, if the BPH's parole unsuitability determination is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision. Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

The record shows that the BPH afforded petitioner and his counsel an opportunity to speak at the hearing, gave them time to review petitioner's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole. Petitioner does not dispute any of this;

5

rather, he claims that the board's determination that he was unsuitable for parole is not supported by the evidence in the record and instead is based on the unchanging facts of his commitment offense. Petitioner's claim is without merit because a review of the relevant factors relied upon by the BPH shows that the board's parole unsuitability determination is supported by some evidence of petitioner's dangerousness at the time of the hearing.

    1. <u>The Commitment Offense and Unstable Social History</u>

    The BPH cited petitioner's commitment offense as support for its determination that petitioner would prove an unreasonable risk of danger to society if released on parole. The BPH decision emphasized the cruel and callous nature of petitioner's offense, noting that the victim was both "abused" and "defiled." Aug. 6, 2007 Hr'g Tr. at 134 (Pet. Ex. A). Petitioner, accompanied by a friend, went to the victim's apartment where an altercation ensued. <u>Id.</u> at 134. Petitioner stabbed the victim first using a Phillips screwdriver then with a butcher knife retrieved from the kitchen, with the victim sustaining a total of over 20 stab wounds. <u>Id.</u> at 134-35. The victim's body was then wrapped in a blanket, deposited into the trunk of petitioner's vehicle and then dumped "off the side of the road to be left there and hopefully never found." <u>Id.</u> at 135. The BPH found that petitioner's murder of the victim using both a screwdriver and a butcher knife, the large number of stab wounds sustained by the victim, and the disposal of the victim's body demonstrated "a total disregard for not just human suffering but human life." <u>Id.</u>

  In making its unsuitability determination, the BPH also noted petitioner's unstable social history, acknowledging his drug and alcohol abuse that started at age 13, and his subsequent inability to complete high school. <u>Id.</u> at 140.

/

The BPH is charged with finding a prisoner unsuitable for parole if it determines that the prisoner would pose an unreasonable risk to public safety if released on parole. Cal. Code Regs. tit. 15, § 2402(a). Under California's parole scheme, a prisoner's commitment offense and pre-commitment social history are factors that may tend to show parole unsuitability. See Cal. Code Regs. tit. 15, § 2402(c)(1), (3). Here, the BPH's findings that petitioner's commitment offense was cruel and callous, and his pre-commitment social history was unstable, constitute "some evidence" in support of the board's decision that petitioner is not suitable for parole. See Hill, 472 U.S. at 454-56.

2. <u>Lack of Insight, Insufficient Self-Help and Demeanor at Hearing</u>

In support of its determination that petitioner was not suitable for parole, the BPH noted petitioner's lack of insight into the crime and his insufficient self-help and therapy during his incarceration as indication of his potential risk to society if released on parole. Pet. Ex. A at 141. The BPH emphasized that petitioner still lacked sufficient insight into his crime, and that he should continue to pursue self-help in order to come to terms with the crime he committed and to demonstrate that he had fully understood the gravity of his criminal behavior. Id. at 140, 143. The BPH found that the petitioner, despite improvement in accepting some culpability for his actions and in demonstrating some remorse, still required further progress in admitting his full culpability considering he still made remarks concerning the victim's character during the 2007 hearing, such as pointing out to the board that the victim was a drug dealer. Id. at 143. The panel found this indicated that petitioner was unjustly shifting part of the blame for his criminal action back onto the victim, demonstrating a lack of complete insight. Id.

/

In earlier BPH parole suitability decisions, the panel had noted that petitioner had made progress in coming to terms with his actions, in that he had admitted that he was the one who committed the murder, but his admission of culpability in those parole hearings was a relatively new development and the panel determined that he needed more time to gain full insight into his crime. May 20, 2005 Hr'g Tr. at 98 (Pet. Ex. A addendum). In the 2007 BPH decision, the board again considered petitioner's improvement in admitting his culpability in the crime, but again cited his tendency to make remarks about the victim's character as an indication of his minimizing the crime. Pet. Ex. A at 143. The BPH recommended that petitioner continue to seek therapy, and encouraged him to explain how the therapy or self-help class was assisting him and how it was applicable to "every day life." Id. at 140.

The BPH also expressed its concern with petitioner's demeanor during the course of the August 7, 2007 hearing, noting that petitioner conveyed feelings of resentment and anger that were directed at the panel. Id. at 141. The BPH members found this indicated that petitioner had not fully come to terms with his actions. Id. The BPH advised petitioner to analyze his own behavior during the hearing, and to understand why his attitude came across as distinctly negative and hostile to the panel members. Id.

In the BPH's judgment, petitioner's negative attitude during the hearing indicated that he had deep-seated anger and such anger potentially could be dangerous to the public if petitioner was released from custody. Id. Although it is difficult to appreciate petitioner's attitude during the course of the hearing from the hearing transcripts alone, the BPH panel members' observation that petitioner was hostile during the hearing must be afforded due consideration because the panel members were present during the hearing.

The BPH's finding that petitioner had a negative attitude during the hearing, combined with its finding that he should seek more self-help and therapy due to insufficient insight into the crime, constitute some evidence in support of the board's decision that petitioner is not suitable for parole. See Hill, 472 U.S. at 454-56; Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E).

### 3. Lack of Clear Parole Plans

In further support of its decision that petitioner is not suitable for parole, the BPH found that petitioner's parole plans were not "well documented viable residential plans" or "well documented employment plans," and regarded petitioner's letters of support as being very general. Pet. Ex. A at 136. The BPH encouraged petitioner to obtain more specific letters of support for his next hearing, and one of the panel members added that in her experience parole plans that do not concretely detail terms of employment and specifics about jobs and housing assistance often result in revocation of offers of assistance, leaving the newly- paroled inmate with a limited ability to support him or herself. Id. at 137.

Although a lack of firm parole plans is not a specific circumstance listed in California's parole scheme as demonstrating parole unsuitability, it certainly may be considered by the board under § 2402(b), which directs the BPH to consider all relevant evidence when determining if petitioner would pose an unreasonable risk to society if released on parole. Under Hill's minimally stringent some evidence standard, petitioner's lack of firm parole plans constitutes some evidence in support of the board's decision that petitioner is not suitable for parole. See Hill, 472 U.S. at 454-56. The board reasonably may determine that a lack of firm parole plans creates too great of a risk that petitioner will violate the conditions of parole and re-offend.

/

The court is satisfied that BPH's August 6, 2007 decision that petitioner is not suitable for parole is supported by some evidence bearing some indicia of reliability – the commitment offense was cruel and callous; petitioner has an unstable social history; petitioner demonstrated anger and hostility during the proceedings; petitioner requires further self-help and therapy programming in order to gain greater insight into his crime and actions; and petitioner lacked sufficiently clear parole plans. Cf. Rosas v. Nielsen, 428 F.3d 1229, 1232-33 (9th Cir. 2005) (upholding denial of parole based on gravity of offense and psychiatric reports); Morales, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense, and need for further psychiatric treatment). These findings constitute "some evidence" that tend to show dangerousness and unsuitability for parole under Hill. See Hill, 474 U.S. at 455-56; see also In re Lawrence, 44 Cal. 4th at 1191 (California's parole scheme requires parole unsuitability to be supported by some evidence of prisoner's dangerousness at the time of the hearing).

Petitioner argues that the BPH's continued reliance on his commitment offense is in violation of the rationale in Biggs and is therefore violative of his due process rights. In Biggs, the Ninth Circuit suggested that "[a] continued reliance in the future on an unchanging factor . . . runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs, 334 F.3d at 910, 916-17. "[I]ndefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes." Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007) (citing Biggs, 334 F.3d at 917). But no such due process violation occurred here because petitioner's denial of parole was not based solely

on his commitment offense.  The BPH also took into consideration petitioner's demeanor during the proceedings, his progression with self-help and therapy, his lack of insight into and minimization of the crime he committed, and his lack of clear parole plans.  See Pet. Ex. A at 134-44.  These other factors/findings, especially when viewed together, constitute "some evidence" that tend to show dangerousness and unsuitability for parole.  See Hill, 474 U.S. at 455-56.

Petitioner finally argues that the BPH did not give proper weight to the circumstances tending to show suitability for parole.  See Cal. Code Regs. tit. 15, § 2402(d)(1)-(9).  Not so.  The record shows that the BPH noted several factors supporting a finding of parole suitability for petitioner – a lack of disciplinary write-ups while incarcerated, numerous general letters of support and petitioner's development of vocational skills while incarcerated.  See Pet. Ex. A at 134-38.  The BPH also acknowledged that petitioner had made significant progress in rehabilitation in prison, including completion of college course work and vocational training.  But the board concluded that "these positive aspects of behavior do not outweigh the factors of unsuitability."  Id. at 138.  It is beyond the scope of this court's authority to re-weigh the factors affecting parole suitability.  Powell v. Gomez, 33 F.3d 39, 42 (9th Cir. 1994).

Petitioner is not entitled to federal habeas relief on his due process claim.  After a careful and independent review of the record, the court is satisfied that the state courts' unreasoned rejection of petitioner's claim was not "objectively unreasonable."  Sass, 461 F.3d at 1127 (applying 28 U.S.C. § 2254(d) to unreasoned state court decision).

/

/

11

# CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED: Feb. 24, 2010

CHARLES R. BREYER
United States District Judge

G:\PRO-SE\CRB\HC.08\Collier, D1.merits.wpd

12